**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16cv66-FDW**

| | | |
|---|---|---|
| GARY CLYDE KEEVER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| FRANK L. PERRY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Petitioner Gary Clyde Keever's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1), and his Motion "Requesting Denial of Summary Judgment and Request for Evidentiary Hearing" (Doc. No. 11). Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 6.)

**I.    PROCEDURAL BACKGROUND**

On April 20, 2011, Petitioner was convicted by a Mecklenburg County jury of six counts of obtaining property by false pretenses, seven counts of making untrue statements or omissions of a material fact in connection with the offer or sale of a security, six counts of engaging in fraud or deceit in connection with the offer or sale of a security, one count of transacting business as a dealer or salesman in North Carolina who was not registered under the North Carolina Securities Act, and one count of selling a security in North Carolina that was not registered under the North Carolina Securities Act. State v. Keever, No. 12–342, 2012 WL 4879367, at *1-2 (N.C. Ct. App. Oct. 16, 2012). Petitioner testified in his own defense. Upon the jury's verdicts, the court consolidated all of the counts under three criminal complaint numbers and sentenced Petitioner to three consecutive terms of 116 to 149 months

1

imprisonment. See id.

Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals, which issued an opinion finding that no error had occurred in either Petitioner's trial or sentencing. See id. at *5. Petitioner then sought discretionary review in the North Carolina Supreme Court, which was denied on January 24, 2013. Petitioner did not seek further review in the United States Supreme Court.

Petitioner next filed a Motion for Appropriate Relief ("MAR") in Mecklenburg County Superior Court on June 5, 2013. (Consent Order, Pet'r's Ex. 1R 24, Doc. No. 14.) The court found that with the exception of Petitioner's claim of ineffective assistance of trial counsel, the claims raised in the MAR were procedurally barred because Petitioner was in a position to raise them on direct review but failed to do so. See Feb. 19, 2014 Order at 47, Keever v. Jackson, Civil Case No. 3:14cv641 (W.D.N.C. filed Nov. 19, 2014) (Doc. No. 1). The court ordered an evidentiary hearing be held on Petitioner's ineffectiveness claim and appointed counsel to represent him at the hearing. See id.

Prior to the evidentiary hearing, Petitioner's MAR counsel and the State arrived at a plea agreement, which the state court memorialized in a Consent Order signed by Petitioner, his attorney, the prosecutor, and the judge presiding over Petitioner's MAR. (Consent Order 24-27, Doc. No. 14.) Pursuant to the agreement, the court found that Petitioner had been denied his Sixth Amendment right to the effective assistance of counsel at trial, granted Petitioner relief, and vacated all of his convictions and sentences. (Consent Order 25-26, Doc. No. 14.)

On August 29, 2014, Petitioner entered an Alford plea to all of the counts for which he previously had been found guilty in 2011, as required by the terms of the plea agreement. (J. and Comm. Order, Resp't's Ex. 8, Doc. No. 8-9.) Judgment was consolidated under one Class C

felony count; Petitioner was sentenced to a single 116-149 month term of imprisonment and given credit for the time he already had served under his original sentence. (J. & Comm.. Order, Doc. No. 8-9.) As part of the agreement, Petitioner waived his right to file a direct appeal or MAR challenging his convictions and sentence. (Consent Order 25, Doc. No. 14.)

Petitioner did not appeal his August 29, 2014 convictions or sentence. (Pet. 3, Doc. No. 1.) On or about November 19, 2014, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court, attacking the constitutionality of his April 20, 2011 criminal judgments. See § 2254 Pet., Civil Case No. 3:14cv641 (Doc. No. 1). The Court dismissed the petition on jurisdictional grounds, holding that when Petitioner filed it, he was in custody pursuant to his 2014 convictions and sentence, not his 2011 convictions. See Feb. 10, 2015 Order, 3:14cv641 (Doc. No. 2) (citing Maleng v. Cook, 490 U.S. 488, 490-93 (1989) (per curium)).

On March 12, 2015, Petitioner filed an MAR in Mecklenburg County Superior Court alleging various defects in the indictments on which his 2011 and 2014 convictions were based. (2015 MAR, Resp't's Ex. 9, Doc. No. 8-10.) It was dismissed on the merits on March 19, 2015. (Order Re MAR, Pet'r's Attach. 11 39, Doc. No. 1.) Petitioner sought a writ of certiorari in the North Carolina Court of Appeals, which was denied on May 22, 2015. (Order Den. Cert. Pet., Pet'r's Attach. 12 40, Doc. No. 1.)

Petitioner filed the instant § 2254 habeas Petition on February 8, 2016. After conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court ordered Respondent to file an answer to the Petition. Subsequently, Respondent filed an Answer (Doc. No. 5), Motion for Summary Judgment (Doc.

No. 6), and Supporting Brief (Doc. No. 8). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was notified of his right to respond to the summary judgment Motion; he did so on November 28, 2016 (Doc. No. 14).

## II. STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

## III. DISCUSSION

In the instant habeas Petition, Petitioner raises the following claims: that he received ineffective assistance of counsel related to his 2014 Alford plea (Ground One); that indictments charging him with offenses against Phillip Berrier were defective, thereby depriving the trial court of subject matter jurisdiction to enter judgment against him with regard to those offenses (Ground Two); that the trial court lacked subject matter jurisdiction over offenses against Ralph Berrier because the indictments alleged the offenses took place in the wrong location (Ground Three); and that his indictment for violating the North Carolina Securities Act was fatally flawed, depriving him of his right to due process (Ground Four). Respondent contends that all of these claims are barred by the statute of limitations. (Resp't's Supp. Br. 21-30, Doc. No. 8.)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a

statute of limitation for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The limitations period is tolled during the pendency of a properly filed state post-conviction action. § 2244(d)(2).

Judgment was entered in this case on August 29, 2014. (J. & Comm. Order, Doc. No. 8-9.) Had Petitioner not waived his right to file a direct appeal, he would have had 14 days to enter a notice of appeal in the North Carolina Court of Appeals. See N.C. R. App. P. 4(a)(2). Therefore, Petitioner's judgment became final, at the latest, on or about September 12, 2014, when the time for seeking direct review expired. See § 2244(d)(1)(A).

The federal statute of limitation ran for 181 days until March 12, 2015, when Petitioner filed his MAR in the Mecklenburg County Superior Court. The limitation period was tolled until May 22, 2015, when the North Carolina Court of Appeals denied his petition for writ of certiorari. See § 2244(d)(2). The limitation period resumed and ran for another 184 days until it finally expired on Monday, November 23, 2015, more than two months before Petitioner filed the instant federal habeas Petition. Notably, the statute of limitation was not tolled while Petitioner's previous § 2254 habeas petition, filed in November 2014, was pending in this Court.

See Duncan v. Walker, 533 U.S. 167, 181-82 (2001) (holding that a federal habeas petition is not an application for state post-conviction or other collateral review within the meaning of § 2244(d)(2) and, therefore, does not toll the limitation period while it is pending). Thus, absent equitable tolling or applicability of one of the other provisions of § 2244(d)(1), Petitioner's habeas petition is time-barred.

Petitioner contends that the statute of limitation does not apply to Grounds Two or Three because jurisdiction can be challenged at any time. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6, (2005) (applying statute of limitation on a claim-by-claim basis). The federal courts that have addressed this argument have held otherwise, however. See Jones-Bey v. Alabama, 2014 WL 1233826, at *2 (N.D. Ala. March 25, 2014) (unpublished) ("There is no exception under AEDPA's statute of limitation for a § 2254 claim that the state court lacked jurisdiction.") (citing Davis v. Secretary Dep't of Corrections, 2009 WL 4730548 (M.D. Fla. Dec. 7, 2009); Umbarger v. Burt, 2008 WL 3911988 (W.D. Mich. Aug. 19, 2008); Blackshear v. McDonough, 2008 WL 2312677 (M.D. Fla. June 4, 2008) (dismissing as untimely a § 2254 petition which argued the one-year limitation did not apply to the allegation that the state court lacked jurisdiction); Carpenter v. Motley, 2007 WL 4553340, at *4 (W.D. Ky. Dec. 18, 2007) ("AEDPA does not extend the time limit for raising state jurisdictional claims."); Griffin v. Padula, 518 F. Supp.2d 671, 677 (D.S.C. 2007) ("There is no exception under the AEDPA for subject matter jurisdiction claims."); Hornsby v. Booker, 2007 WL 1499839, at *1 (E.D. Mich. May 22, 2007) (denying petitioner's motion for reconsideration and reiterating that "a prisoner filing a habeas corpus petition is not exempt from the statute of limitations simply because the prisoner raises a claim that the state court lacked jurisdiction"); Johnson v. Jones, 2006 WL 2092601, at *2 (M.D. Ala. 2006)); see also § 2244(d)(1)(B)-(D) (setting forth the only three circumstances warranting

6

statutory tolling).

Not only is there no exception under the statute of limitation for claims challenging a state court's jurisdiction over a criminal judgment, such claims are not cognizable on federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Whether an indictment is sufficient to confer jurisdiction over a criminal matter in a North Carolina trial court is a determined by state law. See N.C. Gen. Stat. § 15A-924 (2009) (A criminal indictment must contain "facts supporting every element of a criminal offense and the defendant's commission thereof."); State v. Wagner, 572 S.E.2d 777, 779 (2002) ("For a court to have jurisdiction, a criminal offense [must] be charged in the warrant or indictment upon which the State brings the defendant to trial." (citation an internal quotations omitted)). Thus, even if Grounds Two and Three were not untimely, they would not be subject to review here. See Wilson v. Corcoran, 562 U.S. 1, 16 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (State jurisdictional issues generally do not fall within the scope of the "Constitution, laws, or treaties of the United States.").

Petitioner's ineffective assistance of counsel claim is less straightforward.[1] Petitioner asserts that Ms. Chiege Okwara, who was appointed to represent him at his MAR evidentiary hearing, performed deficiently in negotiating the plea agreement that culminated in his entering an Alford plea to all of his previous charges. Petitioner asserts further that but for Okwara's

---

[1] Petitioner does not provide any argument why Ground Four should be considered timely.

errors, there is a reasonable probability that he would have received a more favorable sentence. (Pet. 18 ¶ 20.)

In addition to raising the statute of limitations defense, Respondent argues that Petitioner's claim is not cognizable on federal habeas review because he had no right to effective assistance of counsel in state post-conviction proceedings. (Resp't's Br. 7-8, Doc. No. 8.) There is no constitutional right to counsel in post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987); Murray v. Giarratano, 492 U.S. 1 (1989). Where there is no constitutional right to counsel, there can be no deprivation of effective assistance. See Wainwright v. Torna, 455 U.S. 586, 587-88 (1982). Consequently, there can be no Sixth Amendment deprivation of the effective assistance of post-conviction counsel. Coleman v. Thompson, 501 U.S. 722, 752 (1991). Thus, Respondent is correct that Petitioner had no right to the effective assistance of counsel with respect to his MAR proceedings.

There is a constitutional right to the effective assistance of counsel during plea negotiations, however. See McMann v. Richardson, 397 U.S. 759, 771 (1970) (During plea negotiations defendants are "entitled to the effective assistance of competent counsel."); see also Hill v. Lockhart, 474 U.S. 52, 58 (1985) (holding that Strickland "applies to challenges to guilty pleas based on ineffective assistance of counsel."). Moreover, "[t]he entry of a guilty plea, whether to a misdemeanor or a felony charge, ranks as a 'critical stage' at which the right to counsel adheres." Iowa v. Tovar, 541 U.S. 77, 81 (2004) (citing Argersinger v. Hamlin, 407 U.S. 25, 34 (1972); White v. Maryland, 373 U.S. 59, 60 (1963) (per curiam)). Therefore, the Court concludes that Petitioner had a Sixth Amendment right to the effective assistance of counsel in connection with the entrance of his Alford plea, including the plea negotiations that preceded it, notwithstanding that his plea was entered after his original judgment of conviction

had become final.

Turning back to the statute of limitations, Petitioner contends that it did not begin to run until March 21, 2015, the date on which he obtained emails demonstrating what he believes to be collusion between Okwara and the Assistant District Attorney ("ADA") during plea negotiations. See § 2244(d)(1)(D) (providing that the statute of limitation runs from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence). Assuming for the sake of argument that Petitioner's ineffective assistance of counsel claim is timely under § 2244(d)(1)(D), and that the Court may consider Petitioner's claim under Martinez v. Ryan, 132 S. Ct. 1309 (2012),[2] the claim fails on the merits, even under de novo review.

To prove a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). In the context of a conviction following a guilty plea, a petitioner can show prejudice only by demonstrating "a reasonable

---

[2] In Martinez v. Ryan, 132 S. Ct. 1309 (2012), the Supreme Court held that:

> a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) cert. denied, 135 S. Ct. 1530 (2015) (quoting Trevino v. Thayler, 133 S. Ct. 1911, 1918 (2013) (internal quotation marks, alterations, and emphasis omitted)). Petitioner's ineffective assistance of counsel claim is procedurally defaulted because he did not exhaust it in the state courts, and if he attempted to do so now, he would be barred either by his waiver or by N.C. Gen. Stat. § 15A–1419(a)(1) (requiring denial of a motion for appropriate relief if "[u]pon a previous motion the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so"). See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). Notwithstanding the default, it is not clear that Martinez would apply in this situation, as Okwara was not Petitioner's "trial" counsel.

9

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) (citation and internal quotation marks omitted). Here, Petitioner must demonstrate a reasonable probability that he would have rejected the plea and insisted on proceeding with the evidentiary hearing.

To support his claim, Petitioner has provided copies of emails between Okwara and the prosecutor (hereinafter "ADA"), emails between Okwara and Petitioner's daughter, Christy Green, and letters from Okwara to Petitioner. (Pet'r's Attach. Nos. 1-4, Doc. No. 1; Pet'r's Ex. 2R, Doc. No. 14.) Petitioner's evidence shows that after being appointed, Okwara negotiated a deal that would have reduced Petitioner's sentence to no more than 20 years in prison, which Petitioner rejected. (Okwara May 20, 2014 Letter to Pet., Pet'r's Ex. 2R 29.) Also during that time, Petitioner instructed Okwara to try to get a deal under which he would serve no more than 10 years in prison. (Okwara Aug. 21, 2014 email to C. Green, Pet'r's Attach. No. 3 30.) The ADA originally rejected that proposal, but later reversed his position and agreed to a 120 month minimum sentence. (Okwara/Green June 1-2, 2014 emails, Pet'r's Ex. 2R 31-32; Okwara Aug. 21, 2014, 3:55 p.m. email to C. Green, Pet'r's Ex. 2R 47.)

No initial deadline was set for Petitioner to respond to the State's offer. Okwara continued to correspond with Petitioner regarding the pros and cons of proceeding with the evidentiary hearing or accepting the plea offer, the high, although not insurmountable, legal bar Petitioner would have to overcome to succeed on an ineffective assistance of trial counsel claim, and the fact that it was up to Petitioner to decide whether to accept the plea offer of a 10-year sentence or proceed with a hearing. (Okwara June 14, 2016 & June 20, 2016 Letters to Pet., Pet'r's Ex. 2R 30, 33-35.) Okwara also continued to discuss terms of the plea with the ADA. (Okwara Aug. 21, 2014, 8:24 p.m. email to C. Green (referring to multiple discussion with the

10

ADA regarding length of sentence), Pet'r's Attach. No. 3 29.)

On August 15, 2014, the ADA provided Okwara a written plea offer, which she sent to Petitioner. (Okwara Aug. 16, 2014 Letter to Pet., Pet'r's Ex. 2R 39; Aug. 15, 2014 Plea Offer, Pet'r's Ex. 2R 43.) The offer was slightly more generous than originally proposed in that it offered a minimum sentence of 116 months, rather than 120 months. (Aug. 15, 2014 Plea Offer.) Petitioner responded by letter, asking Okwara to seek a further sentence reduction. (Okwara Aug. 21, 2014 3:55 p.m. email to C. Green, Pet'r's Ex. 2R 47.) An email exchange ensued between Okwara and Green in which Okwara explained that she and the ADA had discussed the plea agreement multiple times, that the terms offered by the State were non-negotiable, and that Petitioner could take or leave the offer. (Okwara/Green Aug. 21, 2014, 7:53 p.m.-9:31 p.m. emails, Pet'r's Attach. No. 3 28-31.) Green responded that Petitioner had not realized that negotiations between Okwara and the ADA had continued prior to the ADA putting the plea offer in writing, that Petitioner was grateful for the offer, and that he wanted to accept it. (Id.) Nevertheless, the next day, Okwara emailed the ADA with the counter-offer Petitioner had communicated in his letter. (Okwara Aug. 22, 2014 email to ADA, Pet'r's Attach. No. 4 32.) The ADA responded with a one-word rejection. (ADA Aug. 22, 2014 email to Okwara, Pet'r's Attach. No. 4 32.) Petitioner entered his <u>Alford</u> plea on August 29, 2014, pursuant to the terms of the State's August 15, 2014 written offer.

Petitioner accuses Okwara of operating under a conflict of interest and colluding with the prosecution to his detriment.[3] He cites as evidence two emails she sent to the ADA on June 3,

---

[3] The Court will not labor over Petitioner's other allegations of deficiency on Okwara's part in negotiating his plea deal, as the evidence he has provided either does not support, or outright contradicts, his version of their communications.

2014.[4] (Pet. 17 ¶¶ 7-10.) The first email is a request by Okwara to the ADA for additional time for Petitioner to consider the 10-year sentence offer. (Okwara June 3, 2014, 8:32 a.m. email to ADA, Pet'r's Attach. No. 1 26.) In that email, Okwara explains that she was "working very hard to prevent another stupid decision by a defendant." (Id.) In a subsequent exchange regarding scheduling, Okwara states that she was "trying VERY HARD to avoid a hearing," because she did not believe "there is any merit to the [IAC] claim." (Okwara June 3, 2014, 11:37 a.m. email to ADA (emphasis in original), Pet'r's Attach. No. 2 27.)

Incensed by the implication that he was behaving stupidly, and outraged by Okwara's admission that she did not think his IAC claim had merit, Petitioner speculates that had she not made these statements to the ADA, it is reasonably probable Okwara would have been able to negotiate a more favorable sentence. Appropriate or not, there simply is nothing in the record to indicate that Okwara's statements had any influence on the ADA's willingness to negotiate further. Moreover, a reasonable probability of a better plea offer is not the prejudice standard Petitioner must meet.

As stated previously, Petitioner can show prejudice only by demonstrating a reasonable probability that, but for counsel's errors, he would not have accepted the plea and would have insisted on proceeding with the evidentiary hearing on his IAC claim. See Hill, 474 U.S. at 59. It is not enough for Petitioner to show that it is "conceivable" he would have rejected the plea and proceeded with the hearing. See Strickland, 466 U.S. at 693. Instead, the probability that he would have done so must be "sufficient to undermine confidence in the outcome." Id. at 694.

---

[4] These are the emails Petitioner asserts he did not obtain until March 21, 2015.

12

Petitioner asserts in both his Petition and Response to the Motion for Summary Judgment that, had he known about Okwara's statements to the ADA, he either would have asked the court for new counsel or dismissed Okwara on his own. (Pet. 18 ¶ 16; Resp. to Mot. for Summ. J. 16.) Nowhere does Petitioner state that he would have rejected the plea offer and proceeded with the evidentiary hearing. Indeed, Petitioner's own evidence demonstrates that he was grateful for the State's August 15, 2014 offer and willingly accepted it, once he realized it was not negotiable. Furthermore, other than accurately laying out the difficulty of winning both an IAC claim, see e.g. Padilla v. Kentucky, 559 U.S. 356, 371 (2010) ("Surmounting Strickland's high bar is never an easy task."), and a subsequent trial, Okwara did not attempt to dissuade Petitioner from rejecting the offer and proceeding with his MAR claim. (Okwara June 14, 2016 & June 20, 2016 Letters to Pet., Pet'r's Ex. 2R 30, 33-35.) In short, Petitioner has not demonstrated a reasonable probability that had he known of Okwara's June 3, 2014 comments to the ADA, he would have rejected the States August 15, 2014 offer and insisted on pursuing his IAC claim.

## IV. CONCLUSION

For the reasons stated herein, Grounds Two, Three, and Four of the instant Petition are untimely, see § 2244(d)(1)(A), and shall be dismissed. Petitioner's ineffective assistance of counsel claim raised in Ground One fails on the merits and shall be denied.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED and DENIED**;

2. Respondent's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**;

3. Petitioner's Motion "Requesting Denial of Summary Judgment and Request for Evidentiary Hearing" (Doc. No. 11) is **DENIED**;

4. Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, the Clerk of Court shall substitute Frank L. Perry for Herb Jackson as Respondent in this action; and

5. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: December 12,

Frank D. Whitney
Chief United States District Judge